Schultz's Estate.

58

T. R. *White*, for exceptant.

*Joseph J. Brown* and *Roberts & Montgomery*, contra.

LAMORELLE, P. J., July 9, 1930.—The learned Auditing Judge (the late Judge Thompson), in the adjudication to which exceptions have been filed, has recited at length the ninth item of the will and that clause of the codicil, a proper interpretation of which determines the question now before us, so that it is unnecessary to repeat them.

He has also set forth a copy of a request and agreement submitted to another Auditing Judge at the audit of a prior account. This paper may or may not be relevant. It was not offered in evidence and, strictly speaking, is not before us, nor is the adjudication of that other judge. As, however, the

Auditing Judge has read such paper into his record; as the arguments, to a great extent, are based on the meaning of that paper; and as the exceptions also treat of it, this opinion is written as if the paper, as well as the previous adjudication and opinion of the court on exceptions, had been so offered.

We may say at the outset that we all agree in Judge Thompson's rulings, his interpretation of the will and codicil, and in the effect to be given the paper offered at a prior audit.

The question is whether the surviving husbands of the two deceased daughters take the estates, or whether the two daughters had a right to exercise the power of appointment under the will and codicil of their mother, the decedent.

The case has been argued with great vigor and this paper has been stressed in one instance as decisive of all questions. For such reasons we deem it advisable to state the result of our further consideration, prefacing same with a few undisputed facts.

Caroline Sophia Schultz, the decedent, died in 1923, leaving a will, dated Dec. 8, 1897, and codicil thereto, dated May 12, 1901. She was survived by two daughters, both married at the time. She bequeathed her entire residuary estate in trust for these two daughters, the net income to be paid to them for life, with sole and separate use, spendthrift clause, etc., with remainder interest to their husbands in case they died without descendants. One daughter, Emilie S. Blois, died testate Dec. 2, 1925, domiciled in Great Britain. She was survived by a husband and by no descendants. Her will was made Aug. 13, 1925, probated at her domicile and copy thereof later filed with the Register of Wills of this county. Her will does not refer to her power of appointment, but it is contended that there was a valid exercise thereof under section 11 of the Wills Act of June 7, 1917, P. L. 403. Some time thereafter, the remaining child, Eliza Freeman Cuffe, died testate, survived by a husband but by no descendants. She refers to any estate as to which she has the right of disposition.

To us it is self-evident that the attempted exercise in each case was absolutely void, for the simple reason that each of the daughters was survived by a husband, and there is nothing in the will or codicil of the original testatrix, their mother, which authorized an appointment where the husbands survived their wives.

The will of testatrix provided, in so many words, that the estate should be held in trust, and in event of the death of either of the daughters without descendants, the other daughter was to receive all the income, and in event of the death of both daughters without children, the *corpus* was to be paid to the husbands of the said daughters, share and share alike, if more than one, and if only one, then to such one.

In the codicil testatrix stated that she considered it desirable that she should give to each of her daughters a power of appointment in respect of the estates which they were to enjoy after her death, so that each might have the power of distributing said estate among her children or grandchildren or "(in the event of there being no children or grandchildren or surviving husbands, as stated in said will) to and among such person or persons as she may select, in such shares and proportions as she may think proper." Testatrix then proceeded by showing how her daughters might appoint by last will and testament in event that there were children; in event that there were no descendants; and in default of such appointment that distribution should be made according to the limitations of *her* will. It was not necessary, in our judgment, that testatrix should repeat in this codicil the words "surviving husbands" for the all-sufficient reason that she had already stated that what

she purposed doing was in event of there being no surviving husbands. In short, the power related solely to children, descendants and other people generally. Its exercise, however, was predicated upon a condition which did not exist when and as the daughters died, because in each case the daughter was survived by a husband and her husband took absolutely under the express gift to him under the original will and codicil. And just here, it may be said, once for all: First, that issue were to take; second, in the absence of issue, surviving husbands were to take; and, third, in event of neither issue nor such husbands, a general power of appointment was conferred; and, fourth, that under no circumstances could there be a valid exercise, therefore, should such husbands survive and there be no issue.

What, if any, effect has the paper upon which certain of counsel place so much reliance?

This paper, which was submitted to the judge who audited the previous account, was a request that he ignore the will of the original testatrix and uphold the will of the daughter, Emilie S. Blois, who was at the time deceased. This paper was executed by the husband of the deceased daughter and by the living daughter and her husband. That Auditing Judge discussed the question at some length and held that the surviving daughter was without power to make such agreement in that the trust was of a sole and separate use and spendthrift character and that she could not by anticipation give away any part or share of her income. It is here well to state that the husband of the deceased daughter under her will was to receive an annual income of £900; that under the will of the original testatrix all income passed to the surviving daughter when one or the other of them should die. The Auditing Judge further ruled that the paper submitted to him was of no legal value, in that it lacked mutuality. It applied to the will of the one daughter then deceased, but there was no provision relating to the will of the daughter then living. His rulings were upheld in an opinion of this court filed Nov. 7, 1927. While, to a certain extent, the paper was in the nature of a family agreement, it was not signed by all parties in interest, and it was in the very teeth of the will and codicil of the original testatrix.

The purpose of this paper, of course, was to divert the estate of Caroline Sophia Schultz, and, failing in its purpose then for reasons hereinbefore set forth, it cannot now, when it is repudiated by both of the surviving husbands, be used for a purpose other than that originally intended. The husband of the daughter who died first might well be willing *at that time* to part with his fee simple interest, which he could not receive in possession until the death of his surviving sister-in-law, for an immediate annuity of £900 a year. This sister-in-law has, however, received all income from and after the death of her sister. She has benefited by the ruling of this court on the previous account. This is another reason why the paper falls of its own weight and is not now a matter of moment in solving the question before us.

It may be added that the ultimate remaindermen under the will of the sister who died last have no standing whatever, because the paper submitted as a request at a previous audit made no mention of the will of the surviving sister, nor any provision for what should be done upon her death; it lacked mutuality because it applied to the will of one daughter and not to that of the other.

All exceptions are dismissed and the adjudication is confirmed absolutely.